I want to start out by talking about the State Court of Appeals decision in this case. And I apologize, it didn't appear that it had been put in the excerpts of records, so I'm hoping that the Court has it through the exhibit somehow. Could you speak up, please? I'm sorry? Could you speak? I need you to do it, too. No, I'm okay. Could you speak a little louder? All right. This is, again, a 2254, so we have to go through the whole multidifferential layers of that statute and the preexisting jurisprudence on how you analyze a jury instruction error. The State has conceded that the imperfect self-defense instruction given in Mr. Martinez's case was in error. And when you look at the evidence in this case and look at the arguments that the defense presented to the jury, the error was at the core portion of the defense, the reasonableness of it imposed a reasonable standard on Mr. Martinez's behavior when that should not have been there. So when you take a look at the California Court of Appeals decision, there were two questions that it was asked on direct review. One was a Jackson v. Virginia question about the sufficiency of the evidence. So the discussion of the facts that it gave was under that very different view of the evidence. It recited the facts in the light most favorable to the verdict. It looked at what the facts that any rational juror, whether the facts were sufficient that any rational juror could have found him guilty. It then turned to the second question and then very summarily decided that it doesn't cite Chapman, but it uses the same language that Chapman requires, which is harmlessness. It talks about having reviewed the entire record. But it doesn't give an analysis or a discussion of the facts under the Chapman requirements. What Chapman requires is that you look at the evidence in the context of the trial and decide what a fair and reasonable juror, not any rational juror, but what a fair juror would have decided, and whether it was beyond reasonable doubt that this error was harmless. And those are- Counsel, it seems to me that the, I mean, I guess I may be reading the state court's decision differently. But right after stating the harmless beyond a reasonable doubt standard, the court begins by saying, aside from defendant's self-serving testimony that he fired in self-defense, there was absolutely no evidence presented from which a reasonable trier of facts could have found that defendant had formed an actual belief in the necessity to defend himself. And then it goes back through all the evidence again, which suggests to me that it's looking at the evidence again in light of a new standard. I think if you compare that analysis to the transcript, which is relatively short, and the discussion of the jury instruction, the discussion of closing argument from defense counsel, and the admissions that the prosecutor made during his closing of what the evidence before the jury could be read as, what the evidence supported, that conclusion that there's no evidence to support the defense's theory except his self-serving statements is incorrect. Well, that merely introduces a paragraph in which each assertion by the defendant is dealt with and contradicted by the bloodstains and so on and so forth. It doesn't just stop there. I guess that's my point. You started out by saying that the state court's error was not going back through the evidence under the new standard. And I guess I'm wondering how that is so when they actually do go back through all the evidence again. Well, I don't think that – I respectfully disagree with your reading of the State Court of Appeals' decision, that what it first rejects is just incredible, the defendant's story. That's not the standard that you use under Chapman. What you do is you look at the evidence and decide what would a juror – what could a juror decide. And you need to place the burden of this analysis on the state. And by disregarding what the defendant had to say, it shifted that burden onto the defendant. If you take a look at the district attorney's closing argument in the transcript, he goes through several times and makes an argument that says even if you accept what Mr. Martinez has said, you still have to find him responsible for at least second-degree murder. That there are – he concedes that – he disagrees with what Mr. Martinez says. He doesn't – he doesn't believe it's credible. But he does tell the jury that it is possible for you to believe him and still find him guilty of second degree. And in those discussions, you'll find that he intertwines the provocation method of getting to manslaughter – sorry, it's the second degree – with the unreasonable self-defense. And the standard for provocation or heat of passion is, again, a reasonable person standard. So this just compounds the problem with the jury instructions, in my view. I think a fair reading of the record, including the jury instructions, including the closing arguments, which are not discussed, that contextual requirement of Chapman is not in the Court of Appeals' decision in its discussion of that. Are you suggesting that Chapman requires that the reviewing court accept as gospel whatever may be said, for example, by a defendant, even though it – an objective evaluation would characterize it as incredible? Absolutely not. That's not my argument. What Chapman requires is, one, that the burden is on the State – and I don't think it was placed on the State properly here – and, two, that you look at the entire context. And if there was – if the evidence was such that everything contradicted what Mr. Martinez said, then I think you could come to the harmless error analysis and say that it was harmless. I think in the actual facts in this case, you had, for example, Mr. Manuel Martinez, the visiting neighbor person, whose evidence about the sequence and timing of the shots didn't contradict, I don't think, what Mr. Martinez said, the defendant, but it also did contradict what Oscar Trevino, the son of one of the victims, said as far as the sequence and the events. I don't think the evidence was that crystal clear that it was that consistent. There was a very long passage of time between the murder and when this went to trial. The witness's testimony was vague on many things. That's discussed by both the prosecutor and the defense attorney. So I think in the context of this case and the fact that the error in the jury's instruction went to the core of the defense – I mean, the defense, I admit, did argue some diminished reduction of malice to voluntary manslaughter due to the heat of passion, but it's really kind of a very minor part of the defense. The focus of the defense is on this specific wrong part of the instruction. It's the imperfect self-defense. So in the context of the entire thing, I think that the Court of Appeals failed – that its decision was contrary to Chapman. And that gets us past 2254d-1. The Court still would then have to discuss – and, of course, you can do this in whatever order you want, but I think you would still have to do – we're not arguing that the Brecht analysis doesn't apply. You get to do the same analytical gymnastics again, but under a Brecht standard. Excuse me. That is a harder burden for Mr. Martinez than me, just because the standards are higher, but I think the same discussion of the evidence, because, again, you look at it in the context, and the question is, could it have a substantial injurious effect on the verdict? You're leaving aside Mr. Martinez's statements. Is there any evidence that supports his version of the events? If you take his portion out? Leaving aside his statements. I think that if you look at the evidence presented, the physical evidence, that both the – yes, there is. The physical evidence is not as crystal clear in favor of the prosecution as the Court of Appeals opinion would make it sound. There were – the testimony from the other witnesses was that they heard multiple shots. I think it was six or nine shots. They only recovered, I think, two bullets at the scene. So there is some suggestion that the events – the physical events were consistent with an imperfect self-defense. There also was – the prosecution's main theory – Was there any physical evidence that the people in the car – physical evidence that the people in the car were a threat at the time that he shot them? There is physical evidence to suggest that they may not have – that one of them may not have been in the car. But there's no physical evidence of the knife that Mr. Martinez talked about. There is evidence that the crimes – that there was a gap between the shooting and when the police arrived at the crime scene. So there was a discussion that there were other people there. I think Mr. Emmanuel Martinez discussed that a little bit, that there were other people around. And so there's – it's kind of the negative evidence of – the scene wasn't preserved. The other point I wanted to make about the evidence in the car that the defense attorney pointed out is that there was no evidence of any kind of bone fragments or other matter. Blood was recovered, but there – the officer – I'm forgetting his name, but it was the second witness. At the trial, 20 or 30 years of experience discussed all that they found was blood. They didn't find some of the other materials that you would expect to find in that kind of an injury, a head wound injury, if Mr. Martinez had actually entered the car and shot it as the prosecution's version of events suggested. I seem to have about seven seconds, so unless there's another question, I'll sit down. Good morning, Your Honors. My name is Cliff Zoll with the Attorney General's Office for the Respondent. I just briefly want to point out that even if – and this is something that the – the magistrate judge – excuse me – even if one accepted petitioner's self-serving statements, and I think it's fairly clear that – You know, I don't know why it's always necessary when a defendant defends himself to say it's self-serving. That's what the court said also. What – can a defendant ever say anything that you wouldn't characterize as self-serving? Well, I mean, I see Your Honor's point, but I guess it's – I'm not blaming you in particular. I mean, this is not an unusual way of characterizing a defendant's testimony, but it doesn't seem particularly fair. Well, I guess when you look at it in the context of this case where there is no – this so clearly points – You're better off using a less pejorative term like unsupported. Right, okay. Otherwise unsupported or something like that. Sure. I can accept that. The point I wanted to make is that even if you accepted petitioner's version of the events, petitioner's testimony was that he shot the victims while they were walking towards their vehicle. That's in the record. So even though it's apparent that the jury did not accept petitioner's version, even if one were to credit petitioner's version, I still don't see how any reasonable jury could have found that petitioner was in imminent peril. And so even if you accepted petitioner's version, I don't see how you could find that under the Brecht standard that this error would have had a substantial  As one of the justices pointed out, the testimony from the pathologist, the physical evidence, all suggested that the victims were in the vehicle when they were shot or around the vehicle. No weapon was ever found.  So, again, I believe that both the magistrate judge's opinion and the district court's opinion were well-founded. And we just really rely on those opinions. And I don't really have anything further. The court has any questions. Thank you. Thank you. Thank you, Your Honor. Can you explain how it would be self-defense if what occurred was what the petitioner said and he shot the people when they were walking toward the car? Because what Mr. Martinez also said was that, and at the moment I've forgotten which of the two victims, that one of them started to approach him out of the car, start to come out of the car. And I don't know whether his memory was clear that the person had actually opened the door and was lifting up, but that there was a gesture. And then Mr. Martinez's testimony is that one of the victims had a knife. And it was his immediate response to that, the person coming at him with a knife. Is this incorrect that he testified that he shot Romulo and Omar while they were walking toward their car? I think that's correct, that he did say that. But again, with the knife. How could that be self-defense if they were walking toward the car? And that question is the core part of why Mr. Martinez is entitled to leave. It can't be self-defense because that's not reasonable for a defendant to think that he's still in actual imminent peril when the person's walking away. What imperfect self-defense negates is malice, and it's what did he actually believe. Now, he may have, what he testified that he believed was going on was that while they were walking away, that one of them starts to turn or make some motion and he knows this person has a knife and he responds. That response was unreasonable under imperfect self-defense, but that still would negate his liability for murder, a crime which the State has the burden to prove all elements of. If this weapon, this purported weapon never showed up, is this a matter of the police doing a reverse plant, removing? There's no allegation of that. I think it's simply a case of there was a lag time, there were other people around between the time that the crime took place and the police arriving at the scene and securing it. A knife collector came along. There were many people there. It's a farm worker camp. I've seen that happen in other cases where guns are on a body and not there when the police show up moments later. But the last point I'd make is a circumstantial evidence case. So the State had the burden of proving every element and to show that the other explanations for the crime were unreasonable. Thank you, counsel. Thank you. The case just argued will be submitted.
judges: Reinhardt, Graber, Shadur